IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DOUGLAS A. McCLAIN,**

    **Petitioner,**                         **Case No. 2:13-cv-269**

  v.

**BENNIE KELLY,**                         **JUDGE GEORGE C. SMITH**
                                             **Magistrate Judge Kemp**

      **Respondent.**

### REPORT AND RECOMMENDATION

      Petitioner, Douglas A. McClain, a prisoner at the Grafton Correctional Institution located in Grafton, Ohio, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The case is now before the Court on the petition, the return of writ, the traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. The Magistrate Judge further **RECOMMENDS** that Petitioner's requests for an evidentiary hearing and for discovery be **DENIED**.

### I. PROCEDURAL HISTORY

      In the first term of 2009, the Grand Jury of the County of Guernsey issued an indictment charging petitioner with one count of murder in violation of Ohio Revised Code Section 2903.02, with a firearm specification in violation of Ohio Revised Code Section 2941.145 attached. (Doc. #12, Exh. 1). The indictment charged him with purposely causing the death of Candace O'Neill (spelled "Candice O'Neal" in the indictment) on or about

December 28, 2008. He entered a plea of not guilty. (Doc. #1). Prior to trial, petitioner filed proposed jury instructions, including instructions on self-defense and the duty to retreat when attacked in one's home. (Doc. #12, Exh. 4). The State responded and filed proposed jury instructions. (Doc. #12, Exhs. 5 & 6).

The case was tried to a jury beginning on January 26, 2010. On January 29, 2010, the jury returned a guilty verdict. In a judgment entry filed on February 16, 2010, the trial judge sentenced petitioner to three years for the "Firearm Specification" and an indefinite term of fifteen years to life for the "Murder" conviction, to be served consecutively. (Doc. #12, Exh. 12).

Petitioner, through new counsel, filed a timely notice of appeal to the Fifth District Court of Appeals. In his brief, he raised the following assignments of error:

I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

II. THE TRIAL COURT COMMITTED ERROR BY ADMITTING EXCESSIVE PHOTOGRAPHIC EVIDENCE WHICH WERE GRUESOME AND INFLAMMATORY.

III. THE TRIAL COURT COMMITTED ERROR BY IMPROPERLY CHARGING THE JURY.

IV. THE APPELLANT WAS DEPRIVED OF DUE PROCESS OF [sic] BY THE MISCONDUCT OF THE PROSECUTOR.

V. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE WHICH WAS UNFAIRLY PREJUDICIAL.

VI. THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS [sic] BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.

2

(Doc. #12, Exh. 14, at p. i).

In an opinion issued on March 30, 2011, the state court of appeals overruled each assignment of error and affirmed the judgment of the trial court.  *State v. McClain*, 2011-Ohio-1623 (Guernsey Co. App. Mar. 30, 2011) appeal not allowed, 2011-Ohio-4751, 129 Ohio St. 3d 1476, 953 N.E.2d 842 (2011).

On May 16, 2011, petitioner, through his appellate counsel, filed a notice of appeal with the Supreme Court of Ohio.  (Doc. #12, Exh. 18).  He set forth the following propositions of law:

> I. The Appellant was deprived of Due Process of law by the misconduct of the prosecutor.
> II. The Appellant was deprived of Due Process of law by the ineffective assistance of his trial counsel.
> III. The Trial Court committed reversible error by admitting excessively gruesome photographic evidence.

(Doc. #12, Exh. 19, at p. 2).  On September 21, 2011, the Supreme Court of Ohio declined jurisdiction to hear the case and dismissed the appeal because it did not involve any substantial constitutional question.  (Doc. #12, Exh. 20, Case No. 2011-0828).

On September 28, 2010, while petitioner's first appeal was pending, petitioner, through another new attorney, filed a post-conviction petition.  (Doc. #12, Exh. 21).  He claimed that he was not provided effective assistance of counsel and that this resulted in prejudice.  Petitioner raised the following claims of ineffective assistance of trial counsel:

> 1. Failure to call petitioner as a witness;
>
> 2. Failure to question prospective juror;

3

      3.      Admission of a[n] inaccurate diagram; and

      4.      Failure to hire expert witness.

(Doc. #12, Exh. 21). On November 30, 2010, the court issued Findings of Fact / Conclusions of Law / Judgment Entry, ruling that petitioner had "failed to prove that he was not provided effective assistance of counsel nor that he was prejudiced by his trial counsel's performance," and denying relief. (Doc. #12, Exh. 23).

On December 27, 2010, petitioner, through post-conviction petition counsel, appealed the denial of his post-conviction petition to the Fifth District Court of Appeals, raising one assignment of error: "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S PETITION FOR POST CONVICTION RELIEF." (Doc. #12, Exhs. 24 & 25). On November 14, 2011, the state Court of Appeals issued a decision affirming the trial court's judgment denying the petition for post-conviction relief. (Doc. #12, Exh. 27).

On December 28, 2011, petitioner, through a fourth attorney, who is current counsel, filed a notice of appeal with the Supreme Court of Ohio setting forth the following proposition of law:

    I.      A defendant is denied effective assistance of counsel in a case where he is raising the affirmative defense of self-defense if counsel fails to call the defendant as a witness, fails to challenge a prospective juror for cause, fails to provide the jury with an accurate diagram of the incident scene and fails to obtain a necessary expert witness.

(Doc. #12, Exhs. 28 & 29). On March 21, 2012, the Supreme Court of Ohio declined jurisdiction to hear the case and dismissed the appeal because it did not involve any substantial constitutional question. (Doc. #12, Exh. 30).

On April 23, 2012, petitioner, through counsel, filed an application for the reopening of his original direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B). (Doc. #12, Exh. 31). Petitioner argued that appellate counsel failed to raise the following issues in his original direct appeal:

I.    The trial court erred by improperly instructing the jury that the appellant had a duty to retreat in his own home before he could properly assert the affirmative defense of self-defense.

II.   Ohio's requirement that a defendant bears the burden of proof when raising the defense of self-defense is barred by both the federal and Ohio constitution.

III.  The trial court erred by failing to instruct the appellant that he possessed a right to testify.

IV.   The appellant was denied the effective assistance of trial counsel.

(Doc. #12, Exh. 31). On July 26, 2012, the state court of appeals overruled petitioner's Rule 26(B) application for reopening, concluding that petitioner had "failed to establish good cause for untimely filing of the application to reopen." (Doc. #12, Exh. 33).

On August 28, 2012, petitioner, through counsel, filed a notice of appeal of that decision with the Supreme Court of Ohio, setting forth the following propositions of law:

I.    A defendant is denied effective assistance of appellate counsel if such counsel fails to raise meritorious issues that were not in need of outside the record development to fully address the assignment of error.

II.   A state appellate court possesses the discretion to address an issue raised pursuant to Rule 26(B) Application to Re-Open even if the application was filed outside of the 90 day filing limitation to correct a manifest injustice.

5

(Doc. #12, Exhs. 34 & 35).   On November 7, 2012, the Supreme Court of Ohio dismissed the appeal as "not involving any substantial constitutional question."  (Doc. #12, Exh. 37).

On March 6, 2013, petitioner, through counsel, filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2254.

## II.  THE FACTS

The facts of this case were summarized by the state court of appeals in its Opinion of March 30, 2011, as follows.

{¶ 2} In August, 2008, Appellant met Candace O'Neill. Although O'Neill had her own residence, she moved into Appellant's trailer, which was owned by his parents. In December, 2008, O'Neill began expressing concerns about Appellant's behavior, stating that he was acting secretive about where he went. Appellant allegedly told O'Neill that she needed to move out of his home. On the evening of December 27, 2008, O'Neill spoke to her daughter, Meghan. On December 27, O'Neill, who had a college degree in psychology, asked Meghan to obtain paperwork so that O'Neill could apply for a license to be a childcare provider in Summit County.

{¶ 3} O'Neill's friend, Kate Hillman, stated that she spoke with O'Neill at approximately 2:00 p.m. on the day that O'Neill died, December 28, 2008, and that O'Neill stated that her relationship with Appellant was not going well. Hillman stated that she told O'Neill that if the relationship was not working out, O'Neill should walk to the nearby home of O'Neill's sister, Michelle and telephone Hillman when she arrived at Michelle's house. O'Neill indicated that she would, however, she never called Hillman back.

{¶ 4} On December 28, 2008, at 4:35 p.m., Appellant called 911, stating that he had just been shot. According to dispatcher, Christine Galbreth, Appellant was difficult to understand on the phone. Appellant told the dispatcher that the person who shot him had died. When the dispatcher asked who had shot him, he stated that he needed help and hung up. Appellant then called his mother and told her "goodbye."

{¶ 5} When authorities arrived, Appellant was pacing around the outside of the trailer where he lived. He stated that his girlfriend shot him and he shot her back. The emergency medical squad arrived at 4:39 p.m., and observed that Appellant had a through and through gunshot wound on the right side of his chest.

{¶ 6} Despite his injury, Appellant insisted on going to the backyard to say goodbye to his pet wolves and refused assistance getting into the ambulance. He refused assistance in removing his hoodie and removed his own sweatshirt in the ambulance. Appellant was transported to the hospital with two fractured ribs, a hematoma on his lung, and was placed in intensive care. He later left the hospital against medical advice. Subsequently, he returned to the hospital and was readmitted with a partially collapsed lung and a pneumothorax. Dr. Clark Leslie, Appellant's treating physician, testified that it was possible that Appellant's gunshot wound was self-inflicted.

{¶ 7} As sheriff's deputies searched the inside of the home on December 28, 2008, they discovered the body of Candace O'Neill lying in the trailer between the kitchen and the entry to the master bedroom. Her body was lying face up with her feet facing the front door. The coroner discovered a .38 caliber bullet entry wound was in the middle of her back. The coroner discovered that the bullet had traveled in a slightly downward trajectory and exited her body in the middle of the front of her chest. The bullet then struck a portable, folded-up treadmill near her body, before stopping in a living room chair in front of O'Neill's body. There was minimal blood around O'Neill, as the coroner testified that a large amount of blood was pooled in her abdominal cavity, likely due to the fact that her body had been turned over after being shot. DNA testing did not exclude Appellant as a contributor to the blood found on O'Neill's neck, the kitchen floor or the treadmill.

{¶ 8} The coroner testified that when O'Neill was shot, she was facing away from the kitchen and toward the front door. Deputies found the .38 caliber pistol on the kitchen counter and the .45 caliber pistol on the kitchen table in the corner of the kitchen furthest away from O'Neill's body, just to the left of the back door of the residence.

{¶ 9} O'Neill's clothing was tested for gunshot residue and it was determined that when Appellant shot her, he was between one and three feet away from her. Both Appellant and O'Neill tested positive for gunshot residue on their hands. There was testimony that the gunshot residue on

O'Neill's hand could have been deposited there based on the proximity of her body to the gun from when Appellant shot her.

{¶ 10} Guernsey County Deputy Sheriff Jason May testified that there was blood in the kitchen, on the kitchen floor, in both bathrooms, and on both toilets. Officer Curtis Braniger, who arrived three hours after the shooting, testified that there was so much blood in the residence, that had he collected it all, he would still be collecting it on the day of trial. May also testified that there was marijuana in the toilets and that the police also found paraphernalia used to cultivate marijuana in the back bedroom. They also located a black gun holster in the master bedroom on top of a clothing armoire, which had blood evidence on it, that did not exclude the blood of Appellant.

{¶ 11} May located a spent .45 caliber shell casing to a .45 caliber handgun under the kitchen table and located the .45 caliber bullet in the wall near the kitchen table. The bullet retrieved from the wall was determined to have been fired by the gun located in Appellant's residence.

{¶ 12} In the months following O'Neill's death, Appellant told one person that O'Neill shot him in the kitchen and that he shot her while she leaned over him as he lay prone on the kitchen floor. Such a scenario was refuted by the testimony of the coroner. Appellant told two other people that he shot O'Neill in the chest and then shot himself to make it look like self-defense.

{¶ 13} In March, 2009, Thomas Snyder, Jr. met Appellant when Appellant was introduced to Synder's father, Thomas Snyder, Sr., who killed himself on September 28, 2009.

{¶ 14} The junior Snyder testified that in June, 2009, Appellant was at the Snyder residence drinking whiskey and beer. He stated that Appellant told him and his father that Appellant shot himself after he shot O'Neill in the chest while she was in the kitchen. Snyder further testified that Appellant stated that he tried to shoot himself in the rib, but accidentally "took out his lung." Snyder also testified that Thomas Snyder, Sr.'s girlfriend, Ashley Goughenour and her two children left Snyder, Sr., in May and June, 2009, to briefly live with Appellant while they had a romantic relationship. Goughenour returned to Snyder, Sr., in June, 2009. Snyder claimed that Snyder, Sr. killed himself because of Appellant.

*State v. McClain*, 2011-Ohio-1623 (Guernsey Co. App. Mar. 30, 2011).

### III.  PETITIONER'S HABEAS CLAIMS

Petitioner filed his habeas corpus petition in this Court on March 6, 2013.  In his petition, he raised the following nine grounds for relief:

**Ground One:**  Improper Self-Defense Instruction.

**Supporting Facts:** The trial court erred by improperly instructing [the jury] that the [petitioner] had a duty to retreat in his own home before he could properly assert the affirmative defense of self-defense.

**Ground Two:**  Prosecutor misconduct resulted in McClain being denied due process and the right to a fair and impartial trial.

**Supporting Facts:** The prosecutor commented upon the appellant's right to remain silent.  He improperly and incorrectly commented upon the burden of proof placed upon the appellant when asserting the affirmative defense of self defense.

During voir dire, the prosecutor questioned the venire explaining to them that he could not call the appellant as a witness.  The implication being that he would like to present that testimony but was impeded by the appellant's constitutional right to remain silent.

During closing argument the prosecutor improperly argued victim-impact evidence to the jury as a basis for its returning a guilty verdict.

The state elicited testimony from O-Neill's daughter, Meghan O'Neill, which was improper victim impact testimony.  Ms. O'Neill testified that the victim cared for her sister who had Down's syndrome after the parents became unable to do so.  (T. 738).  The state elicited testimony from defense witness and best friend of O'Neill, Kate Hillman, regarding [the fact that] O'Neill worked with mentally and physically disabled persons and that O'Neill took on the burden of caring for her mentally retarded sister.  (T. 964-967)  Specifically stating "Because that is the kind of person she was."  (T. 965)

**Ground Three:**    Trial counsel provided ineffective assistance of

counsel to the Petitioner in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** Counsel submitted proposed jury instruction regarding self-defense prior to trial. In voir dire, counsel raised the affirmative defense of self-defense. Nevertheless, trial counsel failed to object to an improper self-defense instruction which placed the duty to retreat on McClain even though Ohio law requires no duty to retreat when in your own home. The offense here transpired in McClain's home. The failure to insist on proper jury instructions place [sic] an additional burden to prove an element of self-defense which the law did not require.

McClain wanted to testify and expressed this desire to counsel. However, counsel ultimately decided for the Petitioner that he would not testify. Counsel did not advise McClain that he had an absolute right to testify, regardless of counsel's recommendation.

Defense counsel used an inaccurate diagram of the Petitioner's home. The diagram confused the jury. Neither McClain nor his family saw the diagram prior to trial. It did not include any measurements and placed walls in the wrong positions.

Defense counsel failed to object to the constitutionality of Ohio's placing the burden of self-defense upon the defendant. As the right to self defense is based on the Second Amendment of the United States Constitution, the state may not place the burden of enforcing a basic right on a defendant.

During the jury selection, a prospective juror, who had previously sat on a murder trial, was asked by the prosecutor whether he would have any problem serving on McClain's case. The juror's response was "probably not." The juror was visibly concerned and unsure when he answered. As a result, counsel did exercise a peremptory challenge on the juror, but might have had the juror dismissed for cause and saved the challenge for another less favorable juror.

**Ground Four:** McClain was entitled to the *effective* assistance of counsel in his direct appeal of right. *Evitts v. Lucy*, 469 U.S. 387 (1985); Sixth Amendment to the Constitution of the United States; Fourteenth Amendment to the Constitution of the United States. *See also* Ohio

10

App. R. 26(B); S. Ct. Prac. R. XI(5), Staff Commentary to Rule XI, Section 5. The right to effective assistance of counsel is dependent on the right to counsel itself. *Wainwright v. Torna*, 455 U.S. 586, 587-588 (1982). The right to counsel would be meaningless if the counsel provided was inept, incompetent, or ineffective. *Evitts*.

**Supporting Facts:** Appellate counsel failed to raise the following issues:

I. The trial court erred by improperly instructing that the appellant had a duty to retreat in his own home before he could properly assert the affirmative defense of self-defense.

II. Ohio's requirement that a defendant bear the burden of proof when raising the defense of self-defense is barred by the federal constitution.

III. The trial court erred by failing to instruct the appellant that he possessed a right to testify.

IV. The appellant was denied the effective assistance of trial counsel.

**Ground Five:** Ohio's requirement that McClain bore the burden of proof in self-defense [is] unlawful.

**Ground Six:** Failure of trial court to instruct McClain he had right to testify.

**Ground Seven:** The evidence was not sufficient to sustain a conviction for murder where the defendant/appellant acted in self-defense.

**Ground Eight:** The trial court erred by admitting unfairly prejudicial excessive photographic evidence which were gruesome and inflammatory. The admission of the photographs violative [sic] of the appellant's right to due process and a fair and impartial trial in violation of the United States Constitution.

**Supporting Facts:** Multiple photos of the victim were introduced. The photographs were exceptionally gruesome, including photos of the victim being removed in a body bag and autopsy photos.

11

Three photographs alone of the victims face.  Also photos of the victim with the appellant while alive standing near the appellant['s] caged wolves.  The photo depicted the appellant in camouflaged pants, shirtless with visible tattoos.  The victim [was] portrayed as thin, attractive blond woman while the appellant appeared as a shirtless, tattooed rebel who possessed wild animals.

**Ground Nine:** Petitioner McClain's conviction is void and/or voidable because the cumulative errors which occurred at [his] trial deprived him of due process as guaranteed through the Fifth and Fourteenth Amendments to the United States Constitution.

The parties do not dispute that petitioner's petition for habeas corpus is timely and that petitioner exhausted the claims he presents in his petition.  However, respondent argues that petitioner's ninth ground is non-cognizable, that grounds one, two, four, five, six, seven, eight, and subparts of ground three are procedurally defaulted, and that the remaining subparts of ground three are without merit.  Those arguments are addressed below.

## IV.  ANALYSIS

### A.  PROCEDURAL DEFAULT

Respondent argues that all of petitioner's grounds apart from ground nine and certain subparts of ground three are procedurally defaulted.

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus.  28 U.S.C. §2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal

12

defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies.  *Id*.; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...."  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process.  This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so.  In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S.

13

72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S.

14

478, 488 (1986).  Constitutionally ineffective counsel may constitute cause to excuse a

procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).   In order to constitute

cause, an ineffective assistance of counsel claim generally must "'be presented to the

state courts as an independent claim before it may be used to establish cause for a

procedural default.'"  *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478,

479 (1986)).  That is because, before counsel's ineffectiveness will constitute cause, "that

ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore

must be both exhausted and not procedurally defaulted."  *Burroughs v. Makowski*, 411

F.3d 665, 668 (6th Cir. 2005).  Or, if procedurally defaulted, petitioner must be able to

"satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance

claim itself."  *Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000).  The Supreme Court

explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the
> procedural-default doctrine in *Coleman*: "In the absence of the
> independent and adequate state ground doctrine in federal habeas, habeas
> petitioners would be able to avoid the exhaustion requirement by
> defaulting their federal claims in state court. The independent and
> adequate state ground doctrine ensures that the States' interest in
> correcting their own mistakes is respected in all federal habeas cases." 501
> U.S., at 732, 111 S.Ct. 2546. We again considered the interplay between
> exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526
> U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter
> doctrine was necessary to " 'protect the integrity' of the federal exhaustion
> rule." *Id.*, at 848, 119 S.Ct. 1728 (quoting *id.*, at 853, 119 S.Ct. 1728
> (STEVENS, J., dissenting)). The purposes of the exhaustion requirement,
> we said, would be utterly defeated if the prisoner were able to obtain
> federal habeas review simply by " 'letting the time run' " so that state
> remedies were no longer available. *Id.*, at 848, 119 S.Ct. 1728. Those
> purposes would be no less frustrated were we to allow federal review to a

prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 119 S.Ct. 1728 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452-53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

### 1. Ground Four

The Court turns first to the petitioner's claim for ineffective assistance of appellate counsel, which is ground four of his petition for a writ of habeas corpus. The Court will address this ground first because whether procedural default of any other claim can be excused ultimately depends on whether the claim for ineffective assistance of appellate counsel was procedurally defaulted and whether there was cause and prejudice to excuse such default.

In the fourth ground of his habeas petition, petitioner asserted that he was

denied the right of affective assistance of appellate counsel because appellate counsel

failed to raise the following issues:

    I.      The trial court erred by improperly instructing that the appellant had a duty to retreat in his own home before he could properly assert the affirmative defense of self-defense.

    II.     Ohio's requirement that a defendant bear the burden of proof when raising the defense of self-defense is barred by the federal constitution.

    III.    The trial court erred by failing to instruct the appellant that he possessed a right to testify.

    IV.    The appellant was denied the effective assistance of trial counsel.

(Doc. #16 at 19).  Defendant argues that this ineffective assistance of appellate counsel

claim was procedurally defaulted in its entirety because petitioner first raised that claim

in the application for the re-opening of his original direct appeal, and the state court of

appeals denied petitioner's application for reopening on procedural grounds, ruling

that petitioner had "failed to establish good cause for untimely filing of the application

to reopen."  (Doc. #12, Exh. 33).

       There is no question that the first three parts of the *Maupin* test are satisfied here.

Petitioner raised the ineffective assistance of appellate counsel claims in his Rule 26(B)

application for reopening, which is the procedural vehicle under Ohio law for raising an

ineffective assistance of appellate counsel claim.  *See, e.g.*, *Landrum v. Mitchell*, 625 F.3d

905, 916 (6th Cir. 2010) (citing Ohio App. R. 26(B)).  When he did so, the state court of

appeals issued a judgment entry overruling petitioner's application for reopening,

ruling that petitioner had "failed to establish good cause for untimely filing of the application to reopen." (Doc. #12, Exh. 33). The Court of Appeals has consistently held that "an untimely Rule 26(B) application is an adequate and independent state ground that results in a claim being procedurally defaulted." *Baker v. Bradshaw*, 495 F. App'x 560, 566 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 2391, 185 L. Ed. 2d 1107 (U.S. 2013) (citing *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir. 2002) and *Gross v. Warden*, 426 Fed.Appx. 349, 359 (6th Cir. 2011)). Petitioner does not dispute that the first three parts of the procedural default analysis have been satisfied. (Doc. #16 at 15). Petitioner argues, however, that the fourth part of the *Maupin* analysis excuses ground four from procedural default. Specifically, petitioner argues that there was cause and prejudice to excuse the default.

The crux of petitioner's argument is that, in Ohio, the 26(B) application to reopen is the "first, and only, avenue" to raise a challenge to the deficient performance of appellate counsel and, therefore, petitioner was entitled to competent assistance of counsel in his 26(B) application to reopen. (Doc. 16 at 18). Implicit in petitioner's argument is that the late filing of his 26(B) application to reopen was due to ineffective assistance of counsel at the time the 26(B) application should have been filed. This would be a level of proceedings beyond what is typically considered the appellate process for purposes of an ineffective assistance of appellate counsel claim and, as discussed further below, might be termed an ineffective assistance of collateral counsel claim.

18

In support of allowing the failure of counsel to timely file his 26(B) application to serve as cause for the default of his ineffective assistance of appellate counsel claims, petitioner cites to the Supreme Court decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2011). That decision held that in certain state post-conviction proceedings which, under the relevant state law, provided the first opportunity to present an ineffective assistance of <u>trial</u> counsel claim, ineffective assistance of counsel could constitute "cause" for a procedural default. However, as stated by the Court in *Martinez*, the holding in that case was very limited:

> *Colman* [*v. Thompson*, 501 U.S. 722 (1991)] held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial. . . . The rule of *Colman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, and petitions for discretionary review in a State's appellate courts. [Citations omitted]. It does not extend to attorney errors in any proceedings beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 1319-20. Accordingly, *Martinez* did not address the issue presented by petitioner here: whether an attorney's negligence could constitute "cause" in a collateral proceedings which provided the first opportunity to present a claim for ineffective assistance of <u>appellate</u> counsel.

A Rule 26(B) application to reopen is a collateral matter that provides no constitutional right to counsel:

> In sum, the relevant state law, the distinctions between direct review and
> collateral review, and the structure and function of the AEDPA support
> the conclusion that a Rule 26(B) application to reopen is a collateral matter
> rather than part of direct review.  As such, there is no federal
> constitutional right to assistance of counsel at that stage. [*Pennsylvania v.*]
> *Finley*, 481 U.S. [551,] at 555, 107 S.Ct. 1990 ("We have never held that
> prisoners have a constitutional right to counsel when mounting collateral
> attacks upon their convictions and we decline to so hold today. Our cases
> establish that the right to appointed counsel extends to the first appeal of
> right, and no further.") (citation omitted).

*Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005) (footnote omitted).  That remains true

following the Supreme Court's decision in *Martinez*.  *See, e.g., Carter v. Mitchell*, 693 F.3d

555, 565 (6th Cir. 2012).  The Court of Appeals has specifically ruled that "counsel's

deficient performance [at the Rule 26(B) application to reopen stage] cannot establish

cause to excuse the procedural default."  *Id.* at 565 (citation omitted).  Accordingly,

petitioner's reliance on *Martinez* is misplaced.   Petitioner has procedurally defaulted his

ineffective assistance of appellate counsel claim and has not established "cause" to

excuse the procedural default.

Beyond the four-part *Maupin* analysis, this Court considers whether this is "an

extraordinary case, where a constitutional violation has probably resulted in the

conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. at 496; *see also*

*Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  Petitioner has not argued that he meets this

standard.  After review of the record,[1] the Court does not deem this to be a case that

---

[1] The Court notes that pages 365-444 are omitted from the 895-page trial transcript that was filed with this Court.  However, the Court considers this absence to be immaterial to the determinations at hand.

20

meets that standard.  Accordingly, the procedural default bars this Court from addressing petitioner's claim for ineffective assistance of appellate counsel. Additionally, because this claim is procedurally defaulted, ineffectiveness of appellate counsel cannot be "cause" to excuse other grounds for relief that petitioner procedurally defaulted.

## 2.  Ground Three, Certain Subparts

Ground three – that trial counsel provided ineffective assistance – has several parts:

- jury instructions – "Counsel submitted proposed jury instructions regarding self-defense prior to trial.  In voir dire, counsel raised the affirmative defense of self-defense.  Nevertheless, trial counsel failed to object to an improper self-defense instruction which placed the duty to retreat on [petitioner] even though Ohio law requires no duty to retreat when in your own home.  The offense here transpired in [petitioner's] home.  The failure to insist on proper jury instructions place an additional burden to prove an element of self-defense which the law did not require."  (Doc. #1 at ¶27).

- right to testify - "[Petitioner] wanted to testify and expressed this desire to counsel.  However, counsel ultimately decided for the Petitioner that he would not testify.  Counsel did not advise [petitioner] that he had an absolute right to testify, regardless of counsel's recommendation. . . ." (Doc. #1 at ¶¶28-31).

- diagram of petitioner's house - "Defense counsel used an inaccurate diagram of the Petitioner's home.  The diagram confused the jury.  Neither [petitioner] nor his family saw the diagram prior to trial.  It did not include any measurements and placed walls in the wrong positions." (Doc. #1 at ¶32).

- constitutionality of Ohio's law regarding self-defense - "Defense counsel failed to object to the constitutionality of Ohio's placing the burden of self-defense upon the defendant.  As the right to self defense is based on the

Second Amendment of the United States Constitution, the state may not place the burden of enforcing a basic right on a defendant."  (Doc. #1 at ¶33).

- <u>voir dire of prospective juror</u> - "During the jury selection, a prospective juror, who had previously sat on a murder trial, was asked by the prosecutor whether he would have any problem serving on [petitioner's] case.  The juror's response was 'probably not.'  The juror was visibly concerned and unsure when he answered.  As a result, counsel did exercise a peremptory challenge on the juror, but might have had the juror dismissed for caused [sic] and saved the challenge for another less favorable juror. . . ."  (Doc. #1 at ¶¶34-35).

Respondent argues that the following subparts have been procedurally defaulted: the claim regarding jury instructions, the claim regarding the constitutionality of Ohio's law regarding self-defense, and the claim regarding the voir dire of prospective juror.  The parties disagree as to whether these subparts were procedurally defaulted.

Petitioner argues that these subparts of his ineffective assistance of trial counsel claim were not procedurally defaulted because they were presented in his 26(B) application to reopen.  However, before turning to the 26(B) application to reopen, the Court will look to the procedural history to determine what claims were raised prior to that point.

Petitioner, through new counsel (*see* list of counsel on petitioner's "Case History" at doc. #12, exh. 21), timely filed his direct appeal to the Fifth Appellate District.  That appeal raised the claim of ineffective assistance of trial counsel, but only raised one ground: failure of counsel to present expert testimony regarding ballistics and other

22

similar evidence. (Doc. #12, Exh. 14). That claim is not at issue in the petition for habeas corpus. Where, as here, a defendant has new counsel for his or her appeal, res judicata applies to bar claims for ineffective assistance of counsel that were not raised on direct appeal and that "could fairly have been determined without resort to evidence outside the record." *Monzo v. Edwards*, 281 F.3d 568, 576-77 (6th Cir. 2002) ("It is also settled that res judicata applies when a defendant who is represented by new counsel on direct appeal fails to raise the issue of ineffective assistance of trial counsel, and the issue could fairly have been determined without resort to evidence outside the record) (citation omitted). However, in applying the *Maupin* factors to determine whether res judicata resulted in a procedural default here, the Court must determine whether the state courts actually enforced the state procedural sanction. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Here, the state did not enforce that procedural sanction as to all of the subparts of the ineffective assistance of trial counsel claim. Rather, petitioner filed a post-conviction petition that raised ineffective assistance of trial counsel claims on four grounds: (1) failure to call petitioner as a witness (right to testify); (2) failure to question prospective juror (voir dire of prospective juror); (3) admission of an inaccurate diagram (diagram of petitioner's house); and (4) failure to hire expert witness (not relevant to petition for habeas corpus). (Doc. #12, Exh. 21 at 6-10.) Rather than apply the procedural bar, the state court of common pleas issued findings of fact and conclusions of law, ruling that petitioner had "failed to prove that he was not provided effective assistance of counsel

nor that he was prejudiced by his trial counsel's performance." (Doc. #12, Exh. 23).

Petitioner then appealed this denial of his post-conviction petition to the Fifth Appellate

District, arguing that the trial court erred when it denied applicant's petition for post-

conviction relief. (Doc. #12, Exhs. 24&25). The Fifth Appellate District issued a

reasoned decision that affirmed the trial court's judgment denying the petition for post-

conviction relief. (Doc. #12, Exh. 27) In doing so, the Fifth Appellate District ruled on

the merits of the claim regarding petitioner's right to testify and the claim regarding the

diagram of petitioner's house, but it applied a procedural bar to the claim regarding

voir dire of the prospective juror:

> {¶17} Appellant argues his trial counsel was deficient in not challenging
> for cause Clinton Born as a juror. This issue should have been presented
> on direct appeal and therefore is res judicata. Res judicata is defined as
> "[a] valid, final judgment rendered upon the merits bars all subsequent
> actions based upon any claim arising out of the transaction or occurrence
> that was the subject matter of the previous action." *Grava v. Parkman Twp.*,
> 73 Ohio St.3d 379, 1995-Ohio-331, syllabus. We further note Mr. Born was
> peremptory challenged by defense counsel. T. at 163.

(Doc. #12, Exh. 27 at ¶¶11-18). Petitioner appealed to the Supreme Court of Ohio,

raising the same grounds as in the post-conviction petition, and the Supreme Court of

Ohio declined jurisdiction to hear the case and dismissed the appeal as not involving

any substantial constitutional question. (Doc. #12, Exh. 30) Accordingly, the last

reasoned decision of the state court applied a procedural bar to the claim regarding voir

dire of the prospective juror. Because the same decision ruled on the merits as to the

claims regarding petitioner's right to testify and the diagram of petitioner's house, those

claims have not been procedurally defaulted will be considered by this Court on the merits in a separate section to follow.

As to the claim regarding voir dire of the prospective juror, the Fifth Appellate District determined that it should have been presented on direct appeal and was not. As a result, res judicata applied, and the Fifth Appellate District enforced the procedural bar as to that claim.  Res judicata is an adequate and independent state procedural ground that may be used to bar consideration of ineffective assistance of counsel claims asserted in habeas claims.  *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (citations omitted).  Petitioner cannot demonstrate that there was cause for him not to follow the procedural rule because his claims of ineffective assistance of appellate counsel were themselves defaulted.  While ineffective assistance of appellate counsel "can constitute cause to excuse a procedural default. [Citations omitted] . . . 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'"  *Landrum v. Mitchell*, 625 F.3d 905, 916 (6th Cir. 2010) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000)).  Accordingly, applying the four-part *Maupin* analysis demonstrates that the ineffective assistance of counsel claim regarding counsel's alleged failure to question a prospective juror was procedurally defaulted.  *Maupin*, 785 F.2d at 138.

In addition, two of the claims raised in the petition for habeas corpus were not presented to the state court either in the direct appeal or the post-conviction petition. Those claims are the claims regarding (1) counsel's failure to object to an allegedly

improper jury instruction regarding self-defense, and (2) counsel's failure to object to the constitutionality of Ohio's placing the burden of self-defense upon the defendant. Those two claims are discussed below.

Res judicata would also apply to bar those claims because they were not raised in either the direct appeal process or the post-conviction petition. Petitioner contends that those claims were not procedurally defaulted because he raised them in his Rule 26(B) application to reopen. The language of the 26(B) application to reopen actually raises a claim for ineffective assistance of *appellate* counsel for failure to raise the ineffective assistance of trial counsel claims on direct appeal (doc. #12, exh. 31 at 1), but the outcome is the same regardless. As discussed above, the Rule 26(B) application for reopening was overruled as untimely, which is "an adequate and independent state ground that results in a claim being procedurally defaulted." *Baker*, 495 F. App'x at 566 (citations omitted). Accordingly, to the extent that the ineffective assistance of trial counsel claims at issue were raised in the untimely 26(B) application, they were procedurally defaulted. To the extent that those claims were previously procedurally defaulted by being omitted from the direct appeal, the ineffective assistance of appellate counsel claims asserted in the 26(B) application were procedurally defaulted and cannot constitute cause to excuse the preceding procedural default.

Accordingly, the subparts of Ground Three that relate to voir dire of the prospective juror, jury instructions, and the constitutionality of Ohio's law regarding self-defense cannot be addressed on the merits.

### 3.  Ground One

Ground One – improper self-defense instruction – was not presented to the

highest state court in the direct appeal process.  (*See* Doc. #12, Exh. 18).  Petitioner

argues that it was presented in his Rule 26(B) application to reopen, and that, to the

extent that the claim was procedurally defaulted, the default should be excused as a

result of ineffective assistance of trial and appellate counsel.  As with portions of

Ground Three, Ground One was not directly raised in the Rule 26(B) application for

reopening; rather, that application raised the failure of appellate counsel to raise

Ground One in the direct appeal.  (Doc. #12, Exh. 31 at 1).  Accordingly, Ground One

was procedurally defaulted.  The Court must then consider whether petitioner can

demonstrate cause and prejudice sufficient to excuse the default.  As discussed above,

the ineffective assistance of trial counsel claims were procedurally defaulted, and the

ineffective assistance of appellate counsel claims asserted in the 26(B) application were

procedurally defaulted so they cannot constitute cause to excuse the procedural default

of Ground One.  This claim is therefore procedurally defaulted.

### 4.  Ground Two

In his traverse, petitioner "concedes all but one aspect of this claim."  (Doc. #16 at

8).  Petitioner asserts that the prosecutor made "improper victim-impact argument,"

which constituted prosecutorial misconduct.  (Doc. #16 at 8).  Specifically, petitioner's

claim is that the state improperly elicited testimony from O'Neill's daughter regarding

O'Neill's care for her sister who had Down's Syndrome, and from O'Neill's best friend

who testified that O'Neill worked with mentally and physically disabled persons, and then argued that this demonstrated O'Neill's character.  (Doc. #16 at 9).

Petitioner raised this argument in his direct appeal to the Fifth Appellate District of Ohio.  (Doc. #12, Exh. 14 at 17-19).  The Fifth Appellate District determined that "Appellant failed to object to the complained of conduct at trial, therefore a plain error standard applies . . . ."  (Doc. #12, Exh. 16 at 11).  The Fifth Appellate District decided in relevant part:

> Appellant next argues that the State Improperly [sic] played on the sympathies of the jury by having O'Neill's daughter testify that O'Neill had a college degree and had inquired about moving to Summit County to become a childcare provider.  Such evidence goes to show that O'Neill's relationship with Appellant was deteriorating and permissibly aided in proving the State's case.  We further do not find that the testimony of Kate Hillman was improperly admitted or rose to the level of plain error. Hillman spoke to O'Neill on the day of her death and testified that O'Neill and Appellant were having problems.  Moreover, Appellant called Hillman as a witness; to charge the prosecutor with misconduct for cross-examining a defense witness would require that Appellant jump a serious hurdle in proving that the prosecutor's remarks substantially hurt Appellant's case when viewed in the context of the whole trial. . . . None of the complained of conduct amounts to error, much less plain error, on behalf of the prosecution.

(Doc. #12, Exh. 16 at 12-14).

In noting that petitioner failed to object to the prosecutorial misconduct at trial and applying plain error review, the Fifth Appellate District relied on an adequate and independent state ground that would ordinarily result in the claim's being procedurally defaulted.  *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal

habeas review absent a showing of cause and prejudice. . . .  Moreover, we view a state

appellate court's review for plain error as the enforcement of a procedural default."

(citations omitted)) *quoted in Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).  "In

determining whether state courts have relied on a procedural rule to bar review of a

claim, we look to the last reasoned opinion of the state courts and presume that later

courts enforced the bar instead of rejecting the defaulted claim on its merits." *Id*.

(additional citations omitted).

Petitioner and respondent dispute whether Ground Two was presented to the

Supreme Court of Ohio.  In his appeal to the Supreme Court of Ohio, petitioner did

argue that there was prosecutorial misconduct.  However, that claim was described as

follows:

> In the instant matter, the prosecutor for the State of Ohio engaged in
> misconduct when he impermissibly characterized the burden that the
> Appellant carried on the affirmative defense of self-defense.  In closing,
> the prosecutor stated that "The Defendant has failed miserably at the
> burden of proof in this case and cannot meet the burden of self-defense . .
> ."  The phrasing of the prosecutor's comments regarding the burden of
> proof very clearly improperly shifted the burden of proof from the State to
> the Defendant.  While it is true that a criminal defendant does carry the
> burden of proof on an affirmative defense, the way in which the
> prosecutor stated that "the Defendant has failed miserably at the burden
> of proof in this case" implied that the Defendant had the burden to
> disprove his own guilt.  This statement by the prosecutor, even if intended
> to refer to the burden of the Defendant to prove self-defense, mislead the
> jury as to both party's duties and burdens.  It was improper and
> effectively prejudiced the jury toward the Appellant.  As such, the Court
> of Appeals erred in overruling Appellant's conviction.

(Doc. #12, Exh. 19, at 11).  While petitioner's appellate brief did raise a claim of

prosecutorial misconduct, it did not give the Supreme Court of Ohio the opportunity to rule on the claim of prosecutorial misconduct before the Court here, because it made no mention of any sort of victim-impact testimony.  Furthermore, the Supreme Court of Ohio did not issue a reasoned decision, but rather declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. (Doc. #12, Exh. 20).  As a result, the last reasoned decision was the Fifth Appellate District decision, which relied on a procedural bar to bar review of the claim. Accordingly, Ground Two was procedurally defaulted, and petitioner has not established that there was cause and prejudice sufficient to excuse the default.

### 5.  Grounds Five and Six

In Ground Five, petitioner argues that it is unconstitutional for Ohio to require a defendant to bear the burden of proof as to his defense of self-defense.  In Ground Six, Petitioner argues that the trial court deprived him of his right to a fair trial pursuant to the due process clause because the court failed to ensure that petitioner understood that he had a right to testify.  Petitioner and respondent agree that petitioner never presented these claims to the highest state court in the direct appeal process.  Petitioner argues that he raised these claims in his Rule 26(B) application to reopen.  As with Ground One, the Rule 26(B) application for reopening did not raise Ground Five or Ground Six directly, but rather raised the failure of appellate counsel to raise those grounds in the direct appeal.  (Doc. #12, Exh. 31 at 1-7).  Accordingly, Grounds Five and Six were procedurally defaulted, and the Court must consider whether petitioner can

demonstrate cause and prejudice sufficient to excuse the default.  As discussed above, the ineffective assistance of trial counsel claims were procedurally defaulted, and the ineffective assistance of appellate counsel claims asserted in the 26(B) application were procedurally defaulted and cannot constitute cause to excuse the procedural default of Grounds Five or Six.

### 6. Ground Seven

Petitioner's Ground Seven asserts that the evidence was not sufficient to sustain a conviction for murder where the petitioner acted in self-defense.  Petitioner and respondent agree that petitioner raised this issue in his direct appeal to the Fifth District Court of Appeals, but he did not raise this issue in his subsequent appeal to the Supreme Court of Ohio.  Accordingly, Ground Seven has been procedurally defaulted, and petitioner has not demonstrated that cause and prejudice exist to excuse the default.

### 7.  Ground Eight

In Ground Eight, petitioner argued that the trial court erred by admitting unfairly prejudicial photographic evidence, which violated his right to due process and a fair and impartial trial.  Petitioner raised this argument in his direct appeal to the Fifth Appellate District of Ohio.  (Doc. #12, Exh. 14 at 14-16).

The Fifth Appellate District determined that "Appellant failed to object to this alleged error at trial," and quoted a decision of the Supreme Court of Ohio setting forth the general rule that an appellate court will not consider "'any error which counsel for a

31

party complaining of the trial court's judgment could have called but did not call to the

trial court's attention at a time when such error could have been avoided or corrected

by the trial court.'"  (Doc. #12, Exh. 16 at 9 (citations omitted)).  The Fifth Appellate

District decided in relevant part:

> {¶34}  Accordingly, Appellant has waived all but plain error in this
> regard.  *State v. Hill* (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274, 279;
> Crim. R. 52(B). . . .  Plain error will not be found absent a showing by
> Appellant that "but for the error, the outcome of the trial clearly would
> have been otherwise."  *State v. Williams*, 99 Ohio St.3d 439, 458, 2003-Ohio-
> 4164, at ¶ 40, quoting *Long*, supra, at paragraph two of the syllabus.
> . . .
> {¶37} We do not find that the trial court abused its discretion in
> admitting the complained of photographs.  The photographs clarified the
> position that the body was found in and the placement of the wound on
> the victim's body.  While a couple of the photographs were repetitive, we
> do not find the admission of these photographs to rise to the level of plain
> error.
> {¶38} Moreover, even if the admission of the photographs of the
> victim alive with Appellant standing with Appellant's pet wolves rose to
> the level of plain error, Appellant has not proven that he was prejudiced
> by the introduction of such photographs.  Appellant admitted to Thomas
> Snyder that he shot O'Neill and the forensic evidence supports his
> admission.
> {¶39} Appellant's second assignment of error is overruled.

(Doc. #12, Exh. 16 at 9-10).

In noting that petitioner failed to object to the admission of the photographs at

trial and applying plain error review, the Fifth Appellate District relied on an adequate

and independent state ground that ordinarily results in the claim's being procedurally

defaulted.  *Hinkle*, 271 F.3d at 244 ("Ohio's contemporaneous objection rule constitutes

an adequate and independent state ground that bars federal habeas review absent a

showing of cause and prejudice. . . . Moreover, we view a state appellate court's review for plain error as the enforcement of a procedural default." (citations omitted)) *quoted in Mason*, 320 F.3d at 635. "In determining whether state courts have relied on a procedural rule to bar review of a claim, we look to the last reasoned opinion of the state courts and presume that later courts enforced the bar instead of rejecting the defaulted claim on its merits." *Id*. (additional citations omitted). Here, the Supreme Court of Ohio did not issue a reasoned decision, but rather declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. (Doc. #12, Exh. 20). As a result, the last reasoned decision was the Fifth Appellate District decision, which relied on a procedural bar to bar review of the claim. Accordingly, Ground Eight was procedurally defaulted, and petitioner has not established that there was cause and prejudice sufficient to excuse the default.

## B. CUMULATIVE ERROR CLAIM (GROUND NINE)

Respondent argues that ground nine - that conviction is void and/or voidable because the cumulative errors which occurred at [his] trial deprived him of due process as guaranteed through the Fifth and Fourteenth Amendments to the United States Constitution – is not cognizable in federal habeas corpus review, because the United States Supreme Court has not held that distinct constitutional claims can be cumulated to support habeas corpus relief. The case cited by respondent provides this analysis and holding:

Finally, Petitioner alleges that the cumulative effect of the errors at trial

33

rendered his trial fundamentally unfair in violation of due process. If this were an issue of first impression in this Circuit, we might be inclined to agree. The Supreme Court has repeatedly stated that fundamentally unfair trials violate due process, *see, e.g.*, *Riggins v. Nevada*, 504 U.S. 127, 149, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) (quoting *Spencer v. Texas*, 385 U.S. 554, 563-64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)), and common sense dictates that cumulative errors can render trials fundamentally unfair. Additionally, the Supreme Court has expressly cumulated prejudice from distinct errors under the Due Process Clause. *Chambers v. Mississippi*, 410 U.S. 284, 298, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("We need not decide, however, whether this error alone would occasion reversal since Chambers' claimed denial of due process rests on the ultimate impact of that error when viewed in conjunction with the trial court's refusal to permit him to call other witnesses."). Nonetheless, the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005) (discussing cumulated evidentiary errors). No matter how misguided this case law may be, it binds us. *Turker*, 157 F.3d at 457-58. Accordingly, we affirm the district court's dismissal of Petitioner's cumulative error claim.

*Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). This decision is still good law, and this Court is bound by it. Accordingly, ground nine presents no basis for habeas corpus relief.

## C. REMAINING SUBPARTS OF GROUND THREE

The two subparts of Ground Three that were not procedurally defaulted are the following:

- right to testify - "[Petitioner] wanted to testify and expressed this desire to counsel. However, counsel ultimately decided for the Petitioner that he would not testify. Counsel did not advise [petitioner] that he had an absolute right to testify, regardless of counsel's recommendation. . . ." (Doc. #1 at ¶¶28-31).

- diagram of petitioner's house - "Defense counsel used an inaccurate diagram of the Petitioner's home. The diagram confused the jury. Neither

34

[petitioner] nor his family saw the diagram prioer to trial.  It did not include any measurements and placed walls in the wrong positions." (Doc. #1 at ¶32).

Respondent acknowledges that those subparts were not procedurally defaulted and may be considered on the merits.  The Court reviews these grounds under the legal standard set out by Congress in 28 U.S.C. §2254(d).

### 1.  Legal Standard

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review.  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008).  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' [citation omitted] and 'demands that state-court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010) (citations omitted).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

35

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010).  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27, 181 L.Ed.2d 328 (2011) (citation and internal quotation mark omitted).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Id.* (citation omitted).

## 2. Application of Clearly Established Federal Law

Because this Court's task is to determine if the state court's decision on these issues constituted an unreasonable application of clearly established federal law, the

36

analysis begins with the state court's treatment of this claim.  The Fifth Appellate

District issued the last reasoned decision addressing the ineffective assistance of counsel

claims, and it set forth the standard in relevant part as follows:

> {¶11} Because appellant's arguments are based upon ineffective
> assistance of counsel, we will use the following standard set out in *State v.*
> *Bradley* (1989), 42 Ohio St.3d 136, paragraphs two and three of the
> syllabus, certiorari denied (1990), 497 U.S. 1011.  Appellant must establish
> the following:
> {¶12} "2. Counsel's performance will not be deemed ineffective
> unless and until counsel's performance is proved to have fallen below an
> objective standard of reasonable representation and, in addition, prejudice
> arises from counsel's performance.  (*State v. Lytle* [1976], 48 Ohio St.2d 391,
> 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668,
> 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
> {¶13} "3. To show that a defendant has been prejudiced by
> counsel's deficient performance, the defendant must prove that there
> exists a reasonable probability that, were it not for counsel's errors, the
> result of the trial would have been different."

(Doc. #12, Exh. 27).

The Fifth Appellate District properly set forth the controlling principles of law as

set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The state court also explained

*Strickland*'s two-pronged test correctly, noting that in order to demonstrate ineffective

assistance of counsel, a petitioner must show both deficient performance of his or her

attorney and prejudice from that performance, *i.e.* a reasonable probability that, but for

counsel's errors, the outcome of the trial would have been different.  Thus, the question

before the Court is whether the state court unreasonably applied these principles to the

facts of this case.  The Court will examine each part of the ineffective assistance of

counsel claim in turn.

### 3. Ineffective Assistance Claim Relating to Petitioner's Right to Testify

Petitioner claims that he received ineffective assistance of counsel because counsel decided for petitioner that he would not testify even though petitioner told counsel that he wanted to testify, and because counsel did not advise petitioner that he had an absolute right to testify.  While petitioner does raise a portion of this claim in his post-conviction motion and appeal of the denial of that motion, he does not specifically argue in either that counsel was ineffective for failing to inform him that he had an absolute right to testify.  Accordingly, this Court cannot address that portion of the claim on the merits, although it is unlikely that petitioner would have prevailed on that claim.  *See Hodge v. Haeberlin*, 579 F.3d 627, 639-40 (6th Cir. 2009) ("Although the right to testify is a fundamental right subject only to knowing and intelligent waiver, 'waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference.'") (quoting *United States v. Stover*, 474 F.3d 904, 908 (6th Cir.2007)).

The Court now turns to the portion of the claim that petitioner did raise in his post-conviction petition (doc. #12, exh. 21 at 6-8), and again in his appeal of the denial of the post-conviction petition (doc. #12, exhs. 24&25), which is that counsel was ineffective for failing to call petitioner as a witness to testify in support of his defense of self-defense, and for failing to inform petitioner of the negative impact his lack of testimony would have on his case.  The Fifth Appellate District affirmed the trial court's denial of petitioner's post-conviction petition, ruling:

38

{¶14} Appellant argues his trial counsel was deficient in not calling him as a witness to substantiate his claim of self-defense.  The trial court found three witnesses testified to appellant claiming he shot Ms. O'Neill in self-defense, and the jurors were instructed on the affirmative defense.  See, Finding of Fact No. 4 filed November 30, 2010.  The trial court concluded trial counsel's decision not to call appellant as a witness did not rise to the level of deficiency, but constituted trial strategy.  See, Conclusion of Law No. 2 filed November 30, 2010.  We note in his September 24, 2010 affidavit at ¶5, appellant confirmed it was trial strategy: "My two attorney's [sic] disagreed about whether I should testify.  Eventually Mr. LaRue relented to Mr. Lonardo's wishes and advised me not to testify."

{¶15} A difference of opinion between attorneys and/or a client and attorney does not automatically rise to the level of deficiency or demonstrate a manifest injustice.  Three witnesses, Paramedic Gerald Schaffer, Sergeant Jason May, and acquaintance Mark Breece, testified that appellant told them he had been shot by Ms. O'Neill first and he then shot her in self-defense.  T. at 262-263, 512, 580, 939-941.  Trial counsel argued self-defense, and the jury was instructed on such.  T. at 1024, 1031, 1039, 1054-1055[.]

{¶16} In addition, Thomas Snyder, Jr. testified that appellant admitted to him that he staged his own shooting after shooting Ms. O'Neill.  T. at 771-772.  Detective Sam Williams confirmed that Mr. Snyder, Jr. together with his father, Thomas Snyder, Sr., came in and told him this information.  T. at 881.  To put appellant on the stand in the face of these admissions and subject him to cross-examination would have been problematic at best.  We fail to find any deficiency in trial counsel's decision not to have appellant testify.

(Doc. #12, Exh. 27).  The Fifth Appellate District determined that the trial counsel's

decision to not have petitioner testify was a matter of trial strategy, and that the strategy

decision was not deficient.

The Supreme Court has explained the court's role in analyzing decisions of trial

strategy:

Judicial scrutiny of counsel's performance must be highly deferential. It is
all too tempting for a defendant to second-guess counsel's assistance after

conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana, supra*, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *See* Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).

*Strickland*, 466 U.S. at 689-90.  In addition, with respect to a defendant's right to testify, when a tactical decision is made not to have the defendant testify at trial, "Petitioner's assent is presumed as is the effectiveness of Petitioner's counsel, barring any indication by Petitioner at trial that he disagreed with his counsel."  *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir.2000) (emphasis added) *cited in Roush v. Burt*, 313 F. App'x 754, 762 (6th Cir. 2008).

Here, the Fifth Appellate District noted that the trial court had concluded that trial counsel's decision not to have petitioner testify was a matter of trial strategy. Specifically, the trial court noted that three other witnesses testified that petitioner had told them he had been shot by Ms. O'Neill first and then shot her in self defense, and noted that the jury was instructed on self-defense.  The Fifth Appellate District pointed

to additional evidence:  petitioner's affidavit acknowledged that the decision for him

not to testify was part of counsel's trial strategy.  The Fifth Appellate District also noted

that there were real risks in putting petitioner on the stand in light of the testimony by

other witnesses that petitioner had admitted to them that he staged his own shooting

after shooting Ms. O'Neill.  As a result, the Fifth Appellate District, like the trial court,

concluded that there was no deficiency in trial counsel's decision.  The Fifth Appellate

District's decision here was not contrary to or an unreasonable application of clearly

established federal law.  Nor was it based on an unreasonable determination of the facts

in light of the evidence that was presented.

### 4. Ineffective Assistance Claim Relating to Diagram of Petitioner's House

Petitioner also claims that he received ineffective assistance of counsel because

counsel introduced an inaccurate diagram of petitioner's house.  Petitioner raised this

claim in his post-conviction petition.  (Doc. #12, Exh. 21 at (doc. #12, exh. 21 at 9), and

again in his appeal of the denial of the post-conviction petition.  (Doc. #12, Exhs.

24&25).  The evidence that petitioner presented in his post-conviction petition was an

affidavit of petitioner which averred that the diagram of his home was "materially

inaccurate," and an affidavit of petitioner's mother, Nancy McClain, which averred that

the diagram at issue was "materially inaccurate" and that she had prepared an accurate

diagram, which was attached to the affidavit.  (Doc. #12, Exh. 21 at pages 13-16).  The

Fifth Appellate District affirmed the trial court's denial of petitioner's post-conviction

petition, ruling:

{¶18} Appellant argues the diagram of his home presented by defense counsel was inaccurate (Defendant's Exhibit 3). Appellant's mother opined as to its inaccuracy. See, Nancy McClain's September 27, 2010 Affidavit at ¶7. The trial court found appellant's proffered exhibit and defense counsel's diagram were substantially similar. See, Finding of Fact No. 9 filed November 30, 2010. The diagram is specifically marked "NOT TO SCALE." In addition, photographs of the scene were admitted into evidence. T. at 919-920. We concur with the trial court's analysis that the exhibits are similar. Given the direct evidence of the photographs and the testimony of the deputies as to the scene, no evidence of the diagram's inaccuracy was presented to rise to the level of manifest injustice.

(Doc. #12, Exh. 27).

Petitioner's argument, as described in his habeas petition and traverse, is that "Defense counsel used an inaccurate diagram of the Petitioner's home. The diagram confused the jury. Neither McClain nor his family saw the diagram prior to trial. It did not include any measurements and placed walls in the wrong positions." (Doc. #1 at ¶32; Doc. #16 at 14). Petitioner has provided no other evidence or explanation of how the diagram could have mislead the jury or what prejudice it could have caused.

Regarding petitioner's argument that the diagram does not include measurements, the state appellate court correctly noted that the diagram at issue notes that it is "***NOT TO SCALE***." The diagram at issue and the diagram provided by petitioner's mother do differ in certain respects, for example one includes a furnace and closet between a bathroom and one does not, but the general layout including the back door, front door, master bedroom and bathroom, living room, second bathroom, and additional bedrooms are the same. Accordingly, while there are differences between the locations of some walls in the different pictures, petitioner has not explained how

42

those differences could have confused the jury.  Furthermore, as the state appellate court noted, there was photographic and testimonial evidence about the layout of petitioner's house.

This Court's independent review of the record finds that the state court decisions were not an unreasonable application of clearly established Federal law, nor were they based on an unreasonable determination of facts in light of the evidence presented at the state court proceeding.

## V.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge RECOMMENDS that this action be **DISMISSED**.

Furthermore, petitioner has not presented any basis for granting an evidentiary hearing or permitting further discovery, and the Court does not believe that permitting either would assist the Court in determining the relevant issues.  Accordingly, the Magistrate Judge further **RECOMMENDS** that Petitioner's requests for an evidentiary hearing and for discovery be **DENIED**.

## VI.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed

43

findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge